# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| DEBORAH SPILLERS, as the administratrix of the estate of CHARLES E. TAYLOR, deceased, ) ) ) ) | |
| Plaintiff, ) | |
| v. ) ) | Docket No. 3:17-cv-105 |
| EMERGENCY COMMUNICATIONS NETWORK, LLC, d/b/a "CodeRED" d/b/a "ECN", ) ) ) ) ) | JURY DEMANDED |
| Defendant. ) | |

## COMPLAINT

Comes the Plaintiff, through undersigned counsel, and for her cause of action states the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter because the amount in controversy exceeds $75,000.00 and because of diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332. The incident complained of herein took place in Sevier County, TN. Therefore, jurisdiction and venue are proper in this Court.

## PARTIES

2. Deborah Spillers is the daughter of Charles E. Taylor, deceased, and is a resident of Greenville, South Carolina.

3. Ms. Spillers was appointed the Administratrix of the Estate of Charles E. Taylor on December 16, 2016.

4. Charles E. Taylor ("Decedent") was born in Boone County, North Carolina in 1931 and served in the United States Navy during World War II.

5. Decedent was ordained as a minister in 1958.

6. Decedent moved to Gatlinburg, Tennessee in 1978 and brought the wedding chapel business to Gatlinburg by starting the Gatlinburg Chapel Ministries.

7. Decedent performed an estimated 85,000 wedding from 1978 until his death and was affectionately called "Reverend Ed" by those in the community.

8. At the time of his death Decedent was 85 and, at all times relevant to this case, lived at 644 Woodland Drive in Gatlinburg.

9. Defendant Emergency Communications Network, LLC ("Defendant") is a Delaware limited liability company with a principal office located at 780 W. Granada Boulevard, Ormond Beach, Florida, 32174 that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee.

10. Defendant is owned by a private equity group known as Veritas Capital whose assets under management total approximately $5.75 billion.

11. Defendant does business as "Emergency Communications Network", "ECN", and/or "CodeRED".

**PRELIMINARY FACTS**

12. Defendant is in the business of providing emergency communications systems and related products and services to various customers including state and local governments. The concept of providing such service began in 1998 when destructive wildfires and shifting winds

threatened ECN headquarters and residents of north-Central Florida. (See **Exhibit 1**). As a result ECN created for profit an emergency notification system called "CodeRED".

13. ECN provides full-time support specialists at any time, day or night, and, according to their own statements, closely monitors weather and proactively reaches out to clients who may be impacted. Furthermore, each client is provided a dedicated team of client support representatives who are available throughout the life of the contract. (See **Coll. Exhibit 2**).

14. Upon information and belief, ECN has contracted with Sevier County since 2011.

15. Since 2011 ECN has worked closely with the "Systems Architect" on The Integrated Public Alert and Warning System (IPAWS) a system that has the capability of sending text messages to mobile devices to alert residents of dangers.

16. Upon information and belief, Tennessee Emergency Management Agency (TEMA) have completed their alerting authority to use IPAWS, however at the time of the fire neither Sevier County nor The City of Gatlinburg had completed such alerting authority.

17. According to ECN, "many public officials are still unclear about how effective IPAWS can be when used in combination with their existing mass notification system." Upon information and belief, ECN solicited Sevier County to serve as their emergency warning system, and/or to advise or train Sevier County as to the proper emergency warning system that should be in place, and Sevier County materially relied upon such solicitations and assertions by ECN, which caused great suffering and death to Rev. Charles E. Taylor, and many members in the Sevier County community.

**NATURE OF THE CASE**

18. Defendant, at all times relevant to this case, was under contract with Sevier County, Tennessee to provide an emergency notification system to the county and its residents.

19. At 5:30 p.m. on Wednesday, November 23, 2016, National Park Staff responded to two separate 1.5 acre wildfires near the Chimney Tops in the Great Smoky Mountains National Park ("GSMNP").

20. Prior to this date, Sevier County, the Great Smoky Mountains National Park, and the surrounding area had experienced extreme drought conditions with area rainfall more than 13 inches below normal for the year.

21. The Chimney Tops wildfires- now six acres in size- continued to burn and on Saturday, November 26, 2016 the National Weather Service issued a "Fire Weather Planning Forecast for East Tennessee" noting continued dry conditions and predicting increasing winds for Monday, November 28, 2016 for the GSMNP. Sustained winds of up to 24 miles per hour and gusts up to 52 miles per hour were forecast.

22. On Sunday, November 27, 2016 at 3:35 a.m., the National Weather Service issued an "Urgent Weather Message" detailing a high wind watch for several areas including the Sevier County portion of the GSMNP and Gatlinburg for Monday afternoon through Tuesday morning. This message predicted southerly winds increasing to 20-40 miles per hour with gusts up to 60 miles per hour and warned of the possibility of sustained winds of at least 40 miles per hour and gust of 58 miles per hour or stronger and downed trees and power lines.

23. On Sunday, November 27, 2016 at 9:03 a.m., the National Weather Service issued a "Special Weather Statement" for the Sevier County portion of the GSMNP, Sevierville, and Gatlinburg warning of enhanced fired danger that afternoon and evening across East Tennessee. This release described critically dry conditions, extremely low humidity, and high and erratic winds which would produce enhanced fire weather conditions and noted that wildfires would be easier to ignite and much harder to control.

24. On Sunday, November 27, 2016 at 2:52 p.m., the National Weather Service issued an "Urgent Weather Message" for the Sevier County portions of the GSMNP and Gatlinburg stating that the high wind watch remained in effect from Monday afternoon through Tuesday morning.

25. On Sunday, November 27, 2016 at 2:55 p.m., the National Weather Service updated the wind gust prediction to 61 miles per hour for the Tennessee portion of the GSMNP on Monday.

26. On Sunday, November 27, 2016 at 5 p.m., the National Weather Service sent an "Impact Weather Briefing" to numerous government employees and agencies noting the drought conditions, low humidity, and the National Weather Service's previous releases regarding the enhanced fire danger and high winds.

27. On Sunday, November 27, 2016 at 9:28 p.m., the National Weather Service issued another "Urgent Weather Message" related to the high wind watch in effect for Monday and Tuesday.

28. On Monday, November 28, 2016 at 3:50 a.m., the National Weather Service issued a "Fire Weather Planning Forecast for East Tennessee" related to the high wind watch in effect for Monday and Tuesday and forecasting winds of up to 71 miles per hour for the Tennessee portion of the GSMNP.

29. At 4:05 a.m. on November 28, 2016, the National Weather Service issued an urgent weather bulletin stating that its high wind watch was no longer in effect and that instead a high wind warning was in effect for the Tennessee portion of the GSMNP, including the City of Gatlinburg, from 1 p.m. on November 28, 2016 until 7 a.m. on November 29, 2016. The high wind warning indicates that a hazardous high wind event is expected or occurring.

30. By sunrise on November 28, 2016, the National Park staff discovered burning embers were creating spot fires as far as one mile from the main fires burning at the Chimney Tops. Spot fires were observed around the Chimneys Picnic Area and on Bullhead Ridge.

31. A news release issued by the Great Smoky Mountains National Park Public Affairs Office later on the morning of November 28, 2016 stated that the original fire had grown to 500 acres.

32. At this time, National Park staff notified the Gatlinburg Fire Department of the fire situation.

33. At approximately 11:35 a.m., National Park staff said a spot fire was discovered in the Twin Creeks area of the GSMNP, and only 1.5 miles from the Gatlinburg city limits.

34. As a result, Gatlinburg Fire Department Chief Greg Miller positioned firefighting equipment and personnel at the GSMNP boundary in order to hold the fire. Additionally, bulldozers were used to build fire lines.

35. The Gatlinburg Fire Department then went door-to-door notifying residents of Minot Park of a voluntary evacuation.

36. Around the same time that the new spot fires were discovered, calls for state-wide mutual aid were made and reinforcements began arriving later in the afternoon of November 28, 2016.

37. Between 5:45 p.m. and 6:00 p.m., multiple fires began igniting in Gatlinburg.

38. At 6:00 p.m. on November 28, 2016, weather monitoring equipment located on Cove Mountain, just above Gatlinburg, recorded winds of 87 miles per hour before the equipment failed due to a power outage. At the same time, a mandatory evacuation of the Minot Park community was ordered.

39. At 6:08 p.m. on November 28, 2016, the fire from Twin Creeks physically crossed the GSMNP boundary towards the Park Vista Hotel. Several other fires ignited throughout the City of Gatlinburg.

40. A mandatory evacuation of the Turkey's Nest area was issued at 6:27 p.m. At approximately 7:00 p.m. on November 28, 2016, firefighting crews began evacuating areas that were immediately threatened.

41. By 8:00 p.m. on November 28, 2016, a mandatory evacuation of the Ski Mountain area was issued.

42. At 8:14 p.m. on November 28, 2016, the City of Gatlinburg began to experience widespread power outages. Thereafter, a total evacuation of Gatlinburg was ordered.

43. At 8:30 p.m. on November 28, 2016, Sevier County Emergency Management Director John Matthews attempted to make a cell phone call to TEMA in order to request that TEMA issue an alert to all mobile devices in the area notifying the public of the mandatory evacuation. However, Matthews was unable to relay the message to TEMA because two Verizon Wireless cell phone towers ceased operating due to the fires and the call was interrupted.

44. Thereafter, TEMA attempted to reach Matthews in order to get Matthews's approval of the public warning but were unable to reach him due to the failure of the communications networks in Gatlinburg.

45. TEMA never sent the public alert message because Matthews had not approved the verbiage.

46. Shortly before 9:00 p.m. on November 28, 2016, the National Weather Service contacted Sevier County E-911 to offer assistance in the form of transmitting an alert message after the

Service was unable to reach Matthews. A supervisor at Sevier County E-911 requested that the National Weather Service transmit an evacuation notice.

47. At 9:03 p.m. on November 28, 2016, the National Weather Service issued an immediate evacuation notice at the request of the Sevier County Emergency Management Agency for the City of Gatlinburg and nearby communities.

48. Between 8:30 p.m. and 9:30 p.m. on November 28, 2016, the City of Gatlinburg's flood warning system was activated twice.

49. At 11:47 p.m., the National Weather Service once again transmitted an immediate evacuation notice, this time for the City of Pigeon Forge at the request of the Pigeon Forge Emergency Management Agency.

50. Due to the widespread loss of electrical power, phone lines, cell phone service, and internet connections as a result of the fires, police, firefighters, and mass transit personnel resorted to going door-to-door in order to evacuate citizens.

51. Based upon information and belief, Sevier County contracted Defendant to provide an emergency notification system for its residents as the Defendant held itself out as an expert in the emergency communications industry.

52. Based upon information and belief, Sevier County relied upon Defendant to determine the type of emergency notification system needed, create and install this system, ensure that the system was effective, train Sevier County employees on how to utilize the system, and to activate the system in the event of an emergency.

53. Based upon information and belief, Defendant was required, but failed, to do all of these things.

54. As a result of these failures, the Decedent was not warned or notified that he needed to evacuate his residence.

55. Based upon information and belief, at some point during the late evening of Monday, November 28, 2016 or early morning of Tuesday, November 29, 2016, the wildfire spread to the Decedent's property and destroyed his residence and most, if not all, of his personal property.

56. As a result of this fire, the Decedent suffered serious personal injuries and was killed.

57. Decedent's body was discovered several days later.

<b>NEGLIGENCE</b>

58. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in the previous paragraphs and further alleges:

59. Defendant had a duty to use reasonable care to determine the type of emergency notification system needed, create and install this system, ensure that the system was effective, train and advise Sevier County employees on how to utilize the system, to advise Sevier County employees regarding proper upgrades the system during the length of the contract, to monitor the weather and fire, and to activate the system in the event of an emergency.

60. Defendant failed to use reasonable care to determine the type of emergency notification system needed, create and install this system, ensure that the system was effective, train Sevier and advise Sevier County employees on how to utilize the system, to advise Sevier County employees regarding proper upgrades to the system during the length of the contract, to monitor the weather and fire, and to activate the system in the event of an emergency.

61. Furthermore, ECN uses redundant servers in geographically separate data centers and their own CodeRED IPAWS tool with dedicated physical servers, isolated in different subnets from the rest of the network. (See **Exhibit 3**). Any miscommunication or failures in

communication on November 28, 2016 regarding cell towers, phone lines, etc., as it relates to the issuance of an IPAWS warning on mobile phones should have been prevented, and were the direct negligence of ECN failures to have proper communication lines in place, or the failure of ECN to advise, train, or otherwise monitor the actions of Sevier County employees or other entities.

62. Defendant's failure to use reasonable care as alleged above constitutes negligence.

63. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered personal injuries and wrongful death damages in an amount to be proven at trial.

## LIABILITY TO THIRD PERSONS FOR NEGLIGENT MISREPRENTATIONS

64. Plaintiff incorporates the above referenced paragraphs, and would further state that ECN is liable to plaintiff, as a third party, for negligent misrepresentations ECN made to Sevier County employees regarding ECN's expertise regarding emergency systems, or their ability to advise or train Sevier County employees on the proper system to be put in place.

65. Rev. Taylor, as well as others in the Sevier County area, were members of a group intended to benefit from or be guided by the representations ECN made to Sevier County employees regarding emergency services capabilities and services, and plaintiff, as well as others, relied on such information, or lack thereof, that was made to Sevier County employees.

66. As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff has suffered personal injuries and wrongful death damages in an amount to be proven at trial.

## PUNITIVE DAMAGES

67. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in the previous paragraphs and further alleges:

68. Defendant's actions and/or inactions were intentional, fraudulent, malicious, and/or reckless such that Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

69. Charles E. Taylor was 85 years of age and enjoyed good health when he died; he had a life expectancy of many years, had a substantial capacity to earn money in any art, trade or profession, had good personal habits for industry, had good personal habits for sobriety, and had established earning capacity. Plaintiff, as the administratrix of her father's estate, brings this action for the mental and physical suffering of Charles E. Taylor, medical, funeral and other necessary expenses, property damage suffered, and all other damages for wrongful death recoverable under T.C.A. §20-5-113. In addition, the heirs of Charles E. Taylor aver that they suffered loss of the consortium or society of the deceased, which included not only the tangible benefits but also those intangible benefits received from a father, such as attention, guidance, care, protection, training, companionship, affection, solace and love.

70. In addition, plaintiff seeks any damages under common law, including, but not limited to, personal injuries and property damage sustained by Rev. Charles E. Taylor prior to death.

WHEREFORE, Plaintiff sues the defendants for a fair and reasonable amount of compensatory damages to be determined by the jury but not to exceed ten million dollars ($10,000,000.00), punitive damages in the amount determined by the jury, court costs, discretionary costs, and demands a jury to try this action. In addition, plaintiff seeks any general relief to which she is entitled.

Respectfully submitted, this 24th day of March, 2017.

/s/ Dan C. Stanley
Dan C. Stanley, BPR 021002
Stanley & Kurtz, PLLC
422 South Gay Street, Suite 301
Knoxville, TN 37902
865-522-9942
dan@danchanningstanley.com

and

/s/ Eric B. Foust
Eric B. Foust, BPR 029808
Law Offices of Eric B. Foust
422 South Gay Street, Suite 302
Knoxville, TN 37939
865-250-5182
eric@foustlawfirm.com

*Attorneys for the Plaintiff*